

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0285-12

---

### MICHAEL HERRING, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### BOWIE COUNTY

---

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALÁ, JJ., joined. MEYERS, J., did not participate.

### O P I N I O N

Appellant was 16 years old when he was arrested for, and charged with, aggravated robbery. Because he was a juvenile,[1] he was given his *Miranda* warnings by a magistrate pursuant to Texas Family Code section 51.095(a)(1)(A). There is conflicting testimony in the record as to whether two armed police officers were present when appellant was given these warnings. After the warnings, appellant was questioned by two police officers, and he confessed to the charged robbery, as well

---

[1] Appellant was later certified to stand trial as an adult.

as other robberies and burglaries. The confession was reduced to writing by one of the officers, and appellant signed it. At trial, appellant filed a motion to suppress the signed statement, and argued that, *inter alia,* the statement was taken in violation of Section 51.095 because armed law-enforcement officers were present when he was given the magistrate's warnings. The motion was denied, and a jury found appellant guilty, sentencing him to 20 years' confinement. Appellant appealed and asserted that the trial court erred in denying the motion to suppress.

The court of appeals affirmed appellant's conviction. Appellant filed a petition for discretionary review in this Court, raising one issue: whether Section 51.095(a)(1)(A) permits law-enforcement officers to be present when a juvenile is initially read his rights.[2] Because Section 51.095(a)(1)(A) does not prohibit the presence of law-enforcement officers, we affirm.

**I. Facts**

On May 24, 2010, the complainant and three of his friends were robbed in Texarkana by three people, one of whom brandished an AK-47 assault rifle. Later that night, a Texas Department of Public Safety patrolman saw a vehicle approaching him with its headlights off. The vehicle's headlights went on, and then off, and then on again. The officer followed the vehicle into a parking lot and saw the two rear-seat passengers, one of whom was appellant, exit the vehicle, place an object wrapped in a white cloth behind the vehicle's back tire, and walk away. The officer picked up the object and saw that it was an AK-47. He ran after appellant and caught him, then handcuffed appellant and placed him in the patrol car. The officer questioned appellant about the vehicle's other

---

[2] As stated in appellant's petition for discretionary review, "Although Texas Family Code Section 51.095(a)(1)(A) is silent as to whether law enforcement may be present when a juvenile is initially read his rights, *Diaz v. State* calls this statutory silence into question. Clarification is needed on this point, as Appellant's confession would not have been admissible under the *Diaz* analysis."

occupants, whom appellant identified. The officer found women's jewelry and a cell phone on appellant. The phone was later identified as belonging to a recently robbed Hooks resident.

Appellant was arrested and taken to the Hooks Police Department, a juvenile processing center. A magistrate read him *Miranda* warnings, and he was then interrogated by police officers. After an hour and a half, appellant was taken to the juvenile detention center in Texarkana, where he was put into the custody of a juvenile officer, who transported him to the juvenile detention center in Marshall, Harrison County. Two Texarkana police officers were dispatched to Marshall to obtain a statement from appellant.

The two Texarkana officers took appellant to the office of Justice of the Peace Kenneth Alford. Alford read the *Miranda* warnings to appellant, which according to Alford, appellant understood and voluntarily waived his rights. At the later suppression hearing, Alford stated that he was alone in his office when he administered the warnings to appellant, but one of the Texarkana officers stated that both the officers were present for the warnings.

After the magistrate read the warnings to him, appellant was interrogated by the officers. One officer asked most of the questions, while the other typed appellant's statement. Appellant's statement was given to Alford, who, according to his testimony at the suppression hearing, reviewed it with appellant outside the presence of the officers, and appellant signed it voluntarily. In the signed statement, appellant admits to taking part in the charged robbery, as well as other robberies and burglaries.

Appellant moved to suppress the signed statement at trial, but the motion was denied. Appellant was found guilty and appealed. Relying on *Diaz v. State*, 61 S.W.3d 525, 527 (Tex. App.—San Antonio 2001, no pet.), which stated in *dicta* that "[n]o law enforcement personnel are

allowed to be present during the [magistrate's] warnings . . .," appellant argued that the statement should have been suppressed because it was obtained in violation of Section 51.095(a)(1)(A). The court of appeals disagreed, holding instead that "[t]here is no requirement anywhere in § 51.095 mandating that the magistrate be alone with the juvenile at the time the warnings are given." *Herring v. State*, 359 S.W.3d 275, 280 (Tex. App.—Texarkana 2012, pet. granted). Appellant filed a petition for discretionary review in this Court to resolve the apparent conflict between the courts of appeals.

## II. Analysis

At issue are various subsections of Texas Family Code section 51.095.

§ 51.095 Admissibility of a Statement of a Child
    (a) Notwithstanding Section 51.09, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:
        (1) the statement is made in writing under a circumstance described by Subsection (d) and:
      (A) the statement shows that the child has at some time before the making of the statement received from a magistrate a warning that:
          (i) the child may remain silent and not make any statement at all and that any statement that the child makes may be used in evidence against the child;
          (ii) the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning;
          (iii) if the child is unable to employ an attorney, the child has the right to have an attorney appointed to counsel with the child before or during any interviews with peace officers or attorneys representing the state;
          (iv) the child has the right to terminate the interview at any time;
      (B) and:
          (i) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present, except that a magistrate may require a bailiff or a law enforcement officer if a bailiff is not available to be present if the magistrate determines that the presence of the bailiff or law enforcement officer is necessary for the personal safety of the magistrate or other court

personnel, provided that the bailiff or law enforcement officer may not carry a weapon in the presence of the child; and

(ii) the magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily, and if a statement is taken, the magistrate must sign a written statement verifying the foregoing requisites have been met;

(C) the child knowingly, intelligently, and voluntarily waives these rights before and during the making of the statement and signs the statement in the presence of a magistrate; and

(D) the magistrate certifies that the magistrate has examined the child independent of any law enforcement officer or prosecuting attorney, except as required to ensure the personal safety of the magistrate or other court personnel, and has determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights; . . ..

Section 51.095(a)(1) delineates what is required before a juvenile's written statement may be admitted as evidence. Subsection 51.095(a)(1)(A) requires that the statement show "that the child has at some time before the making of the statement received from a magistrate" the statutory warnings set out in subsections 51.095(a)(1)(A)(i)-(iv). Subsection 51.095(a)(1)(B)(i) requires that "the statement [] be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present . . .." Subsection 51.095(a)(1)(D) instructs the magistrate to determine that the juvenile understands the contents of the statement and that the juvenile has knowingly, intelligently, and voluntarily waived his rights. This section also requires the magistrate to certify that "the magistrate has examined the child independent of any law enforcement officer or prosecuting attorney . . . and has determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights[.]" At issue in this case is whether Subsection 51.095(a)(1)(A) likewise prohibits the presence of law enforcement when the magistrate gives the warnings to the juvenile.

All that Subsection 51.095(a)(1)(A) requires is that a magistrate read the juvenile the

statutory warnings enumerated in Section 51.095(a)(1)(A)(i)-(iv). There is no explicit requirement in this section that the magistrate be alone with the juvenile or that law-enforcement officers not be present. In contrast, Subsections 51.095(a)(1)(B)(i) and 51.095(a)(1)(D) expressly prohibit the presence of law-enforcement officers, unless it is required for the safety of court personnel. Appellant urges us to import the express prohibition of the presence of law-enforcement officers in Subsections 51.095(a)(1)(B)(i) and 51.095(a)(1)(D) into Subsection 51.095(a)(1)(A). We decline to do so.

Appellant concedes that Subsection 51.095(a)(1)(A) is silent as to the presence of law-enforcement officers. Appellant also correctly states that, in *Diaz,* the Fourth Court of Appeals made "clear that no law-enforcement officers are allowed to be present during any of the warnings." *See Diaz*, 61 S.W.3d at 527. However, the issue in *Diaz* was not the presence of law-enforcement officers, but misstatements by the magistrate about the maximum range of punishment. While the court of appeals did state that no officers may be present during the warnings, it cited only generally to Section 51.095 without discussion or analysis as to why that could be true. *See id*. Neither *Diaz* nor appellant offers convincing analysis as to why our interpretation should stray from the text of the statute. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.")

Appellant also proposes general policy reasons why the *Diaz* approach "complies with the purpose of the Juvenile Justice Code," but appellant's argument "is nevertheless one of policy, not of statutory construction." *See Tyra v. State*, 897 S.W.2d 796, 799 (Tex. Crim. App. 1995).

### III. Conclusion

Because Texas Family Code subsection 51.095(a)(1)(A) does not explicitly prohibit the presence of law-enforcement officers when a magistrate reads the required statutory rights to a juvenile, while other subsections of Section 51.095 expressly forbid the presence of law-enforcement officers during other kinds of proceedings, we hold that, by omitting such a prohibition in Subsection 51.095(a)(1)(A), the legislature expressed its intent that such a prohibition should not apply to the reading of the statutory warnings.[3]  We affirm the judgment of the court of appeals.

Delivered:  April 10, 2013
Publish

---

[3] We leave open the question of whether a magistrate may choose to exclude law-enforcement officers from the reading of the statutory warnings.