**Affirmed and Memorandum Opinion filed September 29, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00480-CV

## IN THE MATTER OF D.S.

**On Appeal from the County Court at Law No. 6**
**Fort Bend County, Texas**
**Trial Court Cause No. 20-CJV-023758**

## M E M O R A N D U M   O P I N I O N

Appellant D.S. was adjudicated as a juvenile for engaging in delinquent conduct by committing the felony offense of indecency with a child. *See* Tex. Penal Code Ann. § 21.11(a)(2). In two issues, Appellant challenges the adjudication of the offense and asserts that (1) the evidence is legally insufficient to support the jury's delinquent-conduct finding, and (2) the trial court erred in denying Appellant's motion to suppress. For the reasons below, we affirm.

## BACKGROUND

In November 2019, 11-year-old Claire[1] told her mother that she had been inappropriately touched by Appellant. Appellant was 14 years old at the time of the incident and lived in the same neighborhood as Claire's family.

Approximately one month later, two detectives arrived at Appellant's school and interviewed him about the incident. Appellant told the detectives he had inappropriately touched Claire. The Fort Bend District Attorney subsequently filed an original petition alleging Appellant engaged in delinquent conduct by committing the offense of indecency with a child. *See* Tex. Penal Code Ann. § 21.11(a)(2).

Appellant filed a motion to suppress the statements he made to the detectives, asserting that the statements were "involuntary" and "coerced." The trial court held a hearing and denied Appellant's motion to suppress.

Appellant proceeded to trial in the summer of 2021. After two days of evidence and testimony, the jury returned a verdict finding Appellant engaged in delinquent conduct by committing the felony offense of indecency with a child. The trial court ordered that Appellant be committed to the Texas Juvenile Justice Department. Appellant timely appealed.

## ANALYSIS

In two issues, Appellant asserts (1) the evidence is legally insufficient to support the jury's delinquent-conduct finding, and (2) the trial court erred in denying his motion to suppress. We address these issues separately.

---

[1] We refer to the child victim by a pseudonym. *See* Tex. R. App. P. 9.8(c).

## I. Evidentiary Sufficiency

### A. Standard of Review and Governing Law

Under the Texas Family Code, juvenile justice courts have jurisdiction over all cases involving delinquent conduct by a person who was a child at the time the person engaged in the conduct. *See* Tex. Fam. Code Ann. § 51.04(a). A "child" is a person who is ten years of age or older and under 17 years of age. *Id*. § 51.02(2). Delinquent conduct is defined, among other things, as "conduct, other than a traffic offense, that violates a penal law of this state or of the United States punishable by imprisonment or confinement in jail." *Id*. § 51.03(a)(1).

In a juvenile proceeding, the trial court must conduct an adjudication hearing for the fact finder to determine whether the juvenile engaged in delinquent conduct. *Id*. § 54.03(b). If the fact finder determines that the juvenile engaged in delinquent conduct, the trial court then conducts a disposition hearing. *Id*. § 54.03(h). "Disposition is akin to sentencing and is used to honor the non-criminal character of the juvenile proceeding." *In re D.L.*, 541 S.W.3d 917, 920 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Because juvenile cases are considered "quasi-criminal" proceedings, civil and criminal rules apply at different stages of the same proceeding. *In re I.F.M.*, 525 S.W.3d 884, 886 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The burden of proof at the adjudication hearing is the beyond-a-reasonable-doubt standard applicable to criminal cases. *See* Tex. Fam. Code Ann. § 54.03(f). Accordingly, we review the sufficiency of the evidence to support a finding that a juvenile engaged in delinquent conduct using the standard applicable to criminal cases. *See In re D.L.*, 541 S.W.3d at 920.

Under this legal-sufficiency standard, we consider all the evidence in the

light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences drawn therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *see also Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). This standard applies to both direct and circumstantial evidence. *In re R.R.*, 373 S.W.3d at 735. Although we consider everything presented at trial, we do not substitute our judgment regarding the weight and credibility of the evidence for that of the fact finder. *In re I.F.M.*, 525 S.W.3d at 887. We presume the fact finder resolved conflicting inferences in favor of the verdict and defer to that determination. *Id.*

Here, the State alleged that Appellant engaged in delinquent conduct by committing the felony offense of indecency with a child. We measure the sufficiency of the evidence supporting the essential elements as defined by the hypothetically correct jury charge. *See Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011). As relevant here, a person commits the offense of indecency with a child "if, with a child younger than 17 years of age, . . . the person: (1) engages in sexual contact with the child or causes the child to engage in sexual contact[.]" *See* Tex. Penal Code Ann. § 21.11(a)(1). "Sexual contact" includes "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," if that touching is "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(1).

### B.    Evidence

The jury heard testimony from six witnesses; we summarize the relevant portions of their testimony below.

Claire's father ("Father") was the first witness to testify. Father said he lives

4

at a house in Rosenberg with his wife and five children, including Claire. Claire is the second youngest of the family's children.

Father said the family met Appellant in 2018 when Appellant "knocked on the door and [] said he saw that we had children coming in and out of our house, could they play." Father said Appellant came to their house approximately 6-7 times before the underlying incident occurred. Father said Appellant also played on his older son's basketball team and recalled that his wife would "transport[] the boys for these practices and games."

Father described Appellant as "high energy" and "dominant." Father said Appellant "was very aggressive with being — you know, playing with all the toys first and kind of dominating in that aspect but he was friendly." Father recalled that Appellant "felt very comfortable in our home." Father said Appellant primarily played with Claire and their youngest son.

Father described Claire as "very friendly, [] very laid back, [and] highly intelligent." Father said Claire had been diagnosed with autism but agreed that the diagnosis did not affect her academically. According to Father, Claire did not have as many friends as many of the other children but she considered Appellant a friend.

Father said the incident in question occurred on November 25, 2019, when Claire was 11 years old. On that day, Father said his wife drove Appellant and one of their sons back to the house after basketball practice. Father recalled seeing Appellant go upstairs with the other children to the game room, which is where the children "primarily played." Father said he had a motion-activated camera in the game room.

Admitted into evidence was footage from the game room camera recorded

5

on November 25, 2019. On the footage, Appellant is seen sitting next to Claire on the sofa. At one point, Appellant briefly touches Claire's hands, which were folded in her lap.

The camera footage then shows Appellant and Claire downstairs; Appellant tells Claire "let's go play over there" and points to the dining room. Claire picks up a laptop and follows Appellant into the dining room. According to Father, the dining room is not a location where the children usually play and does not have any cameras.

Father said he was in the downstairs bedroom with his wife when Claire came in appearing "emotional and distraught." Father gave Claire "some time alone with her mother to talk to her" while he went to talk to Appellant. According to Father, he thought Claire may have been upset because Appellant was "taking over the game stuff again" or because she "saw something inappropriate on the computer."

While Father was talking to Appellant, he received a text message from mother "saying that [Appellant] needs to leave." Father recalled telling Appellant "you've got to go" and Appellant left shortly thereafter. Father described this behavior as "atypical" because "with [Appellant], it's difficult to get him to leave." According to Father, this was the first time Appellant did not try to stay at the house for longer. Father said Appellant made "a beeline for the door" and left the house without putting on his socks and shoes, instead carrying them in his hands. Father also recalled that Appellant forgot to take his game system with him when he left.

Father went back inside the house to talk to his wife and learned "something had happened" to Claire. Father said he and his wife went to Appellant's house shortly thereafter to tell Appellant's parents "what their son did, and that he's to

6

never step foot in my house again." Father met with Appellant's mother and told her that Appellant had "touched [his] daughter inappropriately" and that he was not allowed to come over to the house again.

Father said he and his wife did not call the police to report the incident. Father said Appellant's mother reported the incident to the police shortly after their visit with her.

Claire was the second witness to testify at trial. Claire said she was 12 years old at the time of trial and was 11 years old at the time of the November 2019 incident with Appellant. Discussing the day the incident occurred, Claire said Appellant had come over to her family's house and was playing with her in the upstairs game room. Claire said she was sitting on the sofa with Appellant when he "asked to put his hand on [her] lap." When asked to show the jury "where [her] lap is," Claire pointed to her thigh area. Claire said Appellant then "used his hand to bring [her] hand to his lap."

Claire recalled that she and Appellant subsequently moved to the downstairs dining room to play on the computer. Claire said she and Appellant were sitting on chairs next to each other when Appellant asked her "to get closer." Claire said Appellant then "squeezed [her] breasts with his hand." After he touched her breasts, Claire recalled that Appellant "also touched [her] in a different way. It was, like, over [her] pants, but he got, like, sort of — like, where the pants start to split in the middle." When asked to further describe the area that Appellant touched, Claire said: "[I]t wasn't exactly touching my private part, but it was near my vagina and kind of on the inside of my thighs."

After the encounter, Claire said Appellant told her "not to tell anyone." Claire said she felt "uncomfortable" and went to her parents' bedroom. Claire said she lay on their bed and started crying "[b]ecause of all the stuff that was

7

happening." Claire recalled telling her parents what had happened between her and Appellant.

Claire also was questioned about other interactions with Appellant that occurred before the November 2019 incident at her house.[2] Describing the first interaction, Claire said she was traveling in her mother's car with Appellant and two of her brothers when Appellant passed her a note that said, "Tell me if it feels good." Afterwards, Claire said Appellant "squeezed [her] breasts but in a way which no one else saw." On another occasion, Claire said Appellant asked her "when [she] started puberty."

The third witness to testify was Christina Henriquez, a forensic interviewer at Child Advocates of Fort Bend. Henriquez said her work at Child Advocates involved providing services to "children who have made an outcry of some sort of abuse."

Henriquez said she interviewed Claire in December 2019, approximately two weeks after the incident with Appellant. Henriquez said Claire "was consistent" throughout the interview and provided appropriate responses to the questions she was asked. Henriquez said Claire completed an "anatomical drawing" during the interview, which Henriquez described as a procedure used "to clarify any body parts that the child has mentioned during the interview." The anatomical drawing completed by Claire was admitted into evidence and showed circles drawn on the breast, thigh, and vaginal areas.

Finally, the jury heard from Detective Surratt, the investigator assigned to Claire's case. After the incident was reported, Detective Surratt said he met with

---

[2] Before this testimony was elicited, the trial court held a hearing outside the presence of the jury and determined that the evidence was adequate to support a finding by the jury that Appellant committed the separate offenses beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a (procedures governing evidence of extraneous offenses or acts).

Claire's parents. Detective Surratt said Claire's parents consented to a forensic interview and Claire was interviewed by Henriquez. According to Detective Surratt, he remained in a room adjacent to the interview room and watched the interview via a live recording. Detective Surratt said Claire's description of the incident was "consistent [with] what had been reported to [him] previously by the parents."

Detective Surratt said the next step in his investigation was to interview Appellant. Detective Surratt met with Appellant on December 19, 2019, at Appellant's school; the interview was conducted in the school resource officer's office. The interview was videotaped and the footage was admitted into evidence.

At the beginning of the interview, Detective Surratt reads Appellant a form entitled "Voluntary Statement of Juvenile Not In Custody." The form states that Appellant is not in custody or under arrest, that Appellant's statement is given voluntarily, and that the statement may be used as part of a criminal investigation. The form also states that Appellant has the right to an attorney, the right to remain silent, and the right to terminate the interview at any time. After Detective Surratt read Appellant the rights delineated on the form, Appellant signed and dated the form.

Detective Surratt then asked Appellant to "tell me what you think this is about." In response, Appellant said he "recently . . . touched a little girl" who he identified as Claire. Continuing on, Appellant said he touched her "privates" and her "breast over her shirt." Appellant also said he "tried to put [his] hands in her pants." When asked why he did it, Appellant responded "I don't know."

## C. Application

This testimony and evidence, considered in the light most favorable to the

verdict, is legally sufficient to support the jury's delinquent-conduct finding. Specifically, the evidence supports the finding that Appellant engaged in sexual contact with Claire, a child younger than 17 years of age. *See* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1).

As discussed above, Claire testified that Appellant "squeezed [her] breasts with his hand" and touched her "near [her] vagina and kind of on the inside of [her] thighs." The evidence also showed that Claire reported the incident to her parents shortly after it occurred. Therefore, Claire's testimony is legally sufficient evidence to support the jury's delinquent-conduct finding. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (stating that a conviction under chapter 21 "is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person . . . of the alleged offense within one year after the date on which the offense is alleged to have occurred"); *see also Romano v. State*, 612 S.W.3d 151, 158 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("The uncorroborated testimony of the child can support a conviction for indecency with a child.").

Moreover, Claire's account was corroborated by other evidence. The anatomical drawing admitted during Henriquez's testimony showed that Claire had drawn circles on the figure's breast, thigh, and vaginal areas during her forensic interview. Henriquez also said Claire was consistent throughout the interview and provided appropriate responses to the questions she was asked.

The game room camera footage admitted during Father's testimony showed Appellant touching Claire's hands in her lap while they were seated on the sofa in the game room; the footage later showed Appellant and Claire going into the dining room, where Claire alleged the inappropriate touching occurred. According to Father, the same day the footage was captured Claire came into her parents'

10

bedroom "emotional and distraught." Father said he and his wife went to Appellant's house shortly thereafter and told Appellant's mother that Appellant had "touched [his] daughter inappropriately."

Finally, the jury also saw the video footage from Appellant's interview with Detective Surratt. During the interview, Appellant told Detective Surratt that he "touched a little girl" on her "privates" and "breast." Appellant identified the "little girl" as Claire.

Considered together, this evidence is legally sufficient to support the jury's delinquent-conduct finding. *See* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1). We overrule Appellant's first issue.

## II. Motion to Suppress

### A. Standard of Review and Governing Law

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard. *Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021). We give almost total deference to the trial court's determination of historical facts and to the trial court's application of law to fact questions that turn upon credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). This deferential standard similarly applies when the trial court's determinations are based on a recording admitted into evidence at a suppression hearing. *See Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006); *Matthews v. State*, 513 S.W.3d 45, 62 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Appellant argues on appeal that the recorded statement made during his interview with Detective Surratt was involuntary.[3] A statement is involuntary if

---

[3] The Texas Family Code prescribes certain procedures that must be followed when a juvenile's statement is procured during a custodial interrogation. *See* Tex. Fam. Code Ann. § 51.095 (admissibility of a statement of a child). But here, Appellant did not argue in the trial

11

there was "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (en banc); *see also Herring v. State*, 359 S.W.3d 275, 280-81 (Tex. App.—Texarkana 2012), *aff'd*, 395 S.W.3d 161 (Tex. Crim. App. 2013); *Meadoux v. State*, 307 S.W.3d 401, 412 (Tex. App.—San Antonio 2009), *aff'd*, 325 S.W.3d 189 (Tex. Crim. App. 2010). When voluntariness is challenged by the defendant, the State bears the burden of proving by a preponderance of the evidence that the statement was given voluntarily. *Alvarado*, 912 S.W.2d at 211.

In determining the voluntariness of the confession, the trial court examines the totality of the circumstances. *Herring*, 359 S.W.3d at 281. The trial court is the sole judge of the weight and credibility of the evidence and the trial court's finding on voluntariness may not be disturbed absent an abuse of discretion. *Meadoux*, 307 S.W.3d at 412.

## B.    Evidence

For our analysis of this issue, we consider only the evidence admitted at the pretrial hearing on Appellant's motion to suppress. *See, e.g.*, *Hardesty v. State*, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984) (en banc).

Detective Surratt was the first witness to testify at the hearing. Detective Surratt said he met with Appellant on December 19, 2019, at the alternative

court or on appeal that his statement was the product of a custodial interrogation or that section 51.095's procedures were not followed. Therefore, we analyze Appellant's sole argument on this point: that his statement was involuntary. *See, e.g.*, *Herring v. State*, 359 S.W.3d 275, 278-283 (Tex. App.—Texarkana 2012), *aff'd*, 395 S.W.3d 161 (Tex. Crim. App. 2013) (undertaking separate analyses to determine whether the juvenile's statement was (1) procured in violation of section 51.095, or (2) involuntary); *see also Meadoux v. State*, 307 S.W.3d 401, 408 (Tex. App.—San Antonio 2009), *aff'd*, 325 S.W.3d 189 (Tex. Crim. App. 2010) ("A voluntary oral statement by a juvenile that does not stem from custodial interrogation is admissible, even if the juvenile did not receive the statutory admonishments.").

learning center where Appellant attended school. Detective Surratt met with Appellant in the school resource officer's office. According to Detective Surratt, before the interview began, Appellant signed and dated a form entitled "Voluntary Statement of Juvenile Not In Custody." The signed form was admitted into evidence and included the following admonishments in its first paragraph:

- "I, [Appellant], am not under arrest. In other words, I understand that I am free to leave at any time."

- "This statement is given voluntarily and I have not been promised anything in return for this statement, have not been intimidated, forced, or threatened in any way to give this statement."

- "I understand that this statement is to be used by Detective Surratt as part of a criminal investigation."

- "I understand that I may now, or as a result of the following statement, be considered a suspect in the investigation."

The form also shows that Appellant initialed next to each of the following individual statements:

- "I have been read the following rights, understand them, and intelligently and voluntarily waive them."

- "You have the right to remain silent and not make any statement at all and any statement you make may be used as evidence against you."

- "You have the right to have an attorney present to advise you either prior to any questioning or during any questioning."

- "If you are unable to employ an attorney, you have the right to have an attorney appointed to counsel with you prior to or during any interviews with peace officers or attorneys representing the state."

- "You have the right to terminate this interview at any time."

Detective Surratt testified that he did not coerce or threaten Appellant or promise him anything during the course of the interview. Describing Appellant's demeanor as "understanding [and] calm," Detective Surratt recalled that Appellant "spoke

13

intelligently with me." Detective Surratt said Detective Rogers also was present during the interview, but only observed the interview and did not participate in any way.

At this point, the State admitted into evidence the video footage from Appellant's interview with Detective Surratt. The footage shows Appellant walk into the office and sit at a desk across from Detective Surratt. The school resource officer also joins them during the interview before leaving the office shortly thereafter.

Detective Surratt begins by introducing himself to Appellant and saying "you and I will be talking today . . . about an investigation your name came up in." Appellant responds: "I think I already know what the investigation is." Detective Surratt tells Appellant "let me read this to you before we start talking."

Detective Surratt proceeds to read Appellant the admonishments contained on the "Voluntary Statement of Juvenile Not In Custody Form." Appellant appears to understand the content of the form and provides the spelling of his parents' names and information about two recent visits he had with Child Protective Services. Appellant also asks Detective Surratt to clarify one of the admonishments. During this stage of the interview, the school resource officer returns to the office; Appellant expresses that he would prefer if she did not remain in the room during the interview.

After the school resource officer leaves the room, Appellant tells Detective Surratt that he "recently touched a little girl" and "CPS came to investigate." Appellant explains how he knows Claire and her family and says he did "not know why" it happened. When asked "where" he touched Claire, Appellant says "her privates and her breast." Appellant clarifies that he never touched Claire underneath her clothes.

14

When asked about the "reason" he did this, Appellant responds with "I don't know" before telling Detective Surratt that he also had been inappropriately touched several years previously by one of his parents' friends. Appellant also tells Detective Surratt that he is currently seeing a therapist. The interview lasts for approximately 20 minutes; at its conclusion, Appellant asks Detective Surratt for his card.

Throughout the interview, Appellant does not appear anxious or distressed; Appellant appears relaxed and freely responds to Detective Surratt's questions. Detective Surratt does not raise his voice or threaten Appellant during the interview.

On cross-examination, Detective Surratt testified that he did not reach out to Appellant's parents before undertaking his interview with Appellant. Detective Surratt said he did not look into Appellant's "intellectual ability" nor did he inquire as to why Appellant attended school at an alternative learning center. Detective Surratt said he did not investigate whether Appellant was taking any medications at the time of the interview. Detective Surratt acknowledged that both he and Detective Rogers were in uniform and carrying handguns.

Appellant's father was the second witness to testify at the hearing. According to Appellant's father, at the time of the interview Appellant had been attending the alternative learning center for six years because of "behavioral issues." Appellant's father said Appellant is "very polite, he's very intelligent, but he is socially delayed. . . . [H]e has an inability to sit still without medication, severe focusing issues." Appellant's father said Appellant takes mood enhancers, depression medication, and medication for ADHD.

## C.    Application

Considering the record as a whole, the totality of the circumstances supports the trial court's finding that Appellant's statements to Detective Surratt were voluntary. *See Alvarado*, 912 S.W.2d at 211; *Herring*, 359 S.W.3d at 281.

First, Appellant reviewed and signed the "Voluntary Statement of Juvenile Not In Custody" form. The form included multiple admonishments regarding Appellant's rights, including his right to terminate the interview at any time. The interview footage admitted into evidence shows Detective Surratt reading each admonishment to Appellant before Appellant initials next to them. Appellant appears to understand the admonishments and, at one point, asks Detective Surratt for a clarification. This evidence supports the trial court's finding that Appellant's statements to Detective Surratt were voluntary. *See, e.g.*, *Jenkins v. State*, 912 S.W.2d 793, 807 (Tex. Crim. App. 1993) (en banc) (the trial court's finding that the appellant's statement was voluntary was supported by sufficient evidence showing that "appellant was informed of his rights, he understood them, he knowingly waived them, and he voluntarily confessed").

Second, the video footage of the interview does not show Detective Surratt threatening or coercing Appellant in any way. Appellant appears at ease during the interview; he freely answers the questions posed to him and, at several points, volunteers additional information. Appellant does not appear frightened or forced to disclose information.

Finally, although Appellant attended school at an alternative education center, his father testified that he is "very polite" and "very intelligent." This description is reflected in Appellant's interview with Detective Surratt: Appellant appears to understand the purpose of the interview and the questions he is asked and provides appropriate responses.

Based on the record, we conclude that the trial court did not (1) abuse its discretion in finding that Appellant's statements to Detective Surratt were voluntary, and (2) err in denying Appellant's motion to suppress. *See Martin*, 620 S.W.3d at 759; *Meadoux*, 307 S.W.3d at 412. We overrule Appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/    Meagan Hassan
Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.