Randall KING, Appellant,

v.

STATE of Texas, Appellee.

No. 13–82–013–CR.

Court of Appeals of Texas,
Corpus Christi.

June 23, 1983.

Rehearing Denied Sept. 15, 1983.

James M. Murphy, Dallas, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

YOUNG, Justice.

A Nueces County jury found Randall King guilty of possession of marihuana in an amount of more than four ounces.[1] As punishment, the jury assessed a fine of $5,000.00 and a ten year prison term, which confinement was probated.

King brings forth eight grounds of error for our consideration. We shall begin by addressing the grounds which do not require lengthy references to the record.

1. This conviction was based on Tex.Rev.Civ. Stat.Ann. Art. 4476–15 § 4.05 (Vernon 1976). The Act has been amended and the current provision proscribing possession of marihuana may be found at Tex.Rev.Civ.Stat.Ann. Art. 4476–15 § 4.051 (Vernon Supp.1982).

█ Grounds of error two through four refer to the language defining the offense in the indictment and the jury charge. The appellant complains that an element of the offense was omitted. The indictment charges that Randall King did "intentionally and knowingly possess marihuana in an amount of more than four ounces" and the charge to the jury tracked that language. The statute in effect at the time provided that it was an offense to knowingly or intentionally possess a usable *quantity* of marihuana and further provided that possession of more than four ounces was a felony. Tex.Rev.Civ.Stat.Ann. Art. 4476–15 § 4.05 (Vernon 1976).

█ The appellant complains that the omission of the words "usable quantity" renders the indictment defective. The Court of Criminal Appeals has determined that this phrase was inserted to prevent conviction for possession of trace amounts. *Lejeune v. State,* 538 S.W.2d 775 (Tex.Cr. App.1976). Therefore, the minimum quantity requirement of "usable amount" is applicable to the lowest grade, a Class B misdemeanor prohibiting possession of two ounces or less. See Tex.Rev.Civ.Stat.Ann. Art. 4476–15 § 4.05(b)(3) (Vernon 1976); current version is § 4.051(b)(1) (Vernon Supp.1982). "More than four ounces" and "usable quantity" both define the amount of marihuana in the defendant's possession. With the exception of Class B misdemeanors, use of a minimum quantity term is superfluous when the indictment already charges "more than four ounces".

The appellant relies on *Tovar v. State,* 612 S.W.2d 616 (Tex.Cr.App.1981) which held that an indictment for possession of marihuana was defective. Unlike the case before us, the *Tovar* indictment lacked any allegation of quantity. We hold that this indictment sufficiently sets forth the elements of the offense as intended by the Legislature. The second ground of error is overruled.

The third ground of error is essentially the same complaint as the second, except that it refers to the court's charge to the jury. For the reasons cited above, it is overruled.

█ In his fourth ground, the appellant argues that the court impermissibly created a presumption that "more than four ounces" is a "usable quantity". Among the general propositions of law in the charge was one which stated that possession of a "usable quantity" of marihuana is an offense. The application clause charges the jury to determine whether the appellant possessed more than four ounces. The appellant construes these statements together to find the impermissible presumption equating "usable quantity" with "more than four ounces". We fail to see the harm caused to the appellant by such a presumption, since the jury was authorized to convict only if they found that he possessed the greater of two quantities. We need not attempt to follow his logic, however, because his trial objection did not comport with his ground of error on appeal. He has, therefore, presented nothing for our review. *Woods v. State,* 479 S.W.2d 952, 954 (Tex. Cr.App.1972). The fourth ground of error is overruled.

█ In his seventh ground, King contends that the trial court erred in denying his motion for mistrial after the prosecutor improperly commented on his failure to testify during closing argument at the punishment phase. Sam and Marjorie King, the appellant's parents, and several of his friends testified in support of his application for probation. In his review of the evidence during closing argument, the prosecutor referred to the testimony of the defense witnesses in the following manner:

You have heard testimony from all these witnesses that have come in, the mother, the father, they're fine people. The people that came here for him, they're his friends, I don't doubt that. . . .

And in time of need family and friends gather. And sometimes it might be questionable, but there's no need to ask those people any questions because it would serve no purpose. They care for this particular person, but let's don't lose sight, ladies and gentlemen that Mr. King

committed a crime. Mr. King, I believe, is an intelligent man and he knows that he committed a crime, he knows he's guilty.

Defense counsel objected that the statement that King knew he was guilty, constituted a reference to his failure to testify. The trial court instructed the jury to disregard the remark but denied the motion for mistrial.

■ In order to constitute an impermissible comment on a defendant's failure to testify, the prosecutor's language must be either manifestly intended, or of such a character that the jury would necessarily conclude that it was a comment on the defendant's silence. *Angel v. State,* 627 S.W.2d 424, 426 (Tex.Cr.App.1982). The State should have omitted references to what King did or did not know about his guilt since there was no evidence on this issue. We do not think that a jury would necessarily perceive, however, that the statement was a comment on the defendant's failure to testify. An additional reason for our overruling this contention is that the trial court neutralized any harm by instructing the jury to disregard the remark. .

The remaining grounds of error necessitate a recitation of more of the facts. The State attempted to show that Randall King was the pilot of an airplane which crashed on an access road to IH–37 in Nueces County on December 1, 1980, at approximately 7:30 a.m. The plane contained twenty-three bales of marihuana which amounted to 458 pounds. The main issue in the case concerned identity since none of the State's witnesses observed the pilot in the plane.

The State began its case with the testimony of Jackie Taylor, an air traffic controller on duty the day of the crash, who observed a plane go down at 7:40 a.m. Taylor recorded the conversations between the tower and the pilot embodied in State's Exhibit 2, which was played for the jury.

Sgt. Mike Burns of the Corpus Christi Police Department testified that he had become familiar with King's voice during the course of an investigation in which King cooperated. He listened to the tape and identified the pilot's voice as King's.

Brian Schmidt, who was on his way to work that morning, also observed a low-flying aircraft. He drove to the scene intending to help the pilot. When he arrived there were other people standing outside the plane. While he never saw anyone in the plane, Schmidt did observe a man who got up on the right wing of the plane and said "Everything is going to be okay." The witness identified the appellant as that man. Later, Schmidt saw a man running toward a blue car, but he was unsure if it was the same man he saw on the wing.

Larry Dueitt, the owner of a blue Ford, was also on his way to work that morning. He drove close to the downed plane, then began to leave when he saw that no one was inside and when he feared there might be an explosion. As he started to drive away, a clean-cut Anglo male in his late twenties to mid-thirties approached and knocked on his window. The man, who never gave a name, said that he wanted a ride to the nearest phone so that he could call the tower to inform them that he was all right. Dueitt's passenger explained that he came from San Antonio and that he ran out of fuel. Mr. Dueitt drove the man to the Hilton Hotel. While the witness said that he believed the appellant was his passenger, under cross-examination he admitted that he could not be absolutely certain.

A fifth witness, William Einhaus, for the prosecution, testified that on the morning of December 1, 1980, King called him and asked to borrow his plane. Einhaus, a friend of the appellant, consented, met King and drove him to the airport.

The remainder of the evidence was developed through the police investigation. F.A.A. documents, including bills of sale and registration, showed that the owner of the plane involved in the crash was Randall King. Contents of the airplane which were introduced included the bales of marihuana, a briefcase, maps, an aeronautical chart, a semi-automatic gun and ammunition. A chemist testified that the bales were indeed

marihuana. Among the items were a piece of paper and a cardboard box with the name Randall King written on them. Photographs of fingerprints lifted from one of the bullets and from a map matched the appellant's.

The defense called a police officer and the investigator for the district attorney to testify about their efforts to locate other witnesses. The final defense witness was Stephen Knief, who was on the scene soon after the crash. Knief did not see anyone in the plane. He remembered that there were between three and five people present when he arrived. He spoke to one man, who he was sure was not the appellant, but he did not know whether the man he spoke to was the pilot.

■ In his first ground of error, the appellant disputes the trial court's refusal to grant his motion for continuance which he made on the day of trial. At the appellant's request, the trial court had already granted two continuances, resulting in a trial delay of nine months. Defense counsel stated that this postponement was needed in order to locate evidence, specifically latent prints which the police lifted from the Dueitt vehicle.

At the hearing on the motion, two assistant district attorneys testified. Both men described their efforts to locate the latent prints and their conclusions that they were lost. They also stated their belief that the prints did not match the appellant's. Defense counsel argued that since no one would discard the prints, they must be capable of being found and the court should grant additional time to do so. This argument was repeated in the motion for new trial.

■ Our standard in reviewing the propriety of a trial court's ruling on a pretrial motion for continuance is whether the court abused its discretion. *Taylor v. State,* 612 S.W.2d 566, 570 (Tex.Cr.App.1981). If the testimony in support of the motion does not indicate a probability that the evidence can be secured by a continuance or if it shows that granting the motion would delay the

trial indefinitely, the court may properly refuse the request. *Varela v. State,* 561 S.W.2d 186, 191 (Tex.Cr.App.1978).

In the case before us, the appellant showed that he persisted in his efforts to obtain the evidence before the trial date. The relevance of this evidence is also clear: it tends to show that the passenger in the Dueitt vehicle may have been someone other than the appellant. Two additional factors convince us, however, that the court did not commit reversible error. Our first reason is that the testimony of the assistant district attorneys, as well as that of police officers who were questioned during the trial, showed that several people had made a thorough search for the latent prints and could not find them. The second reason is that the trial court would have been justified in denying the motion because testimony did not establish a probability that the evidence could be found if additional time were given. Thus we find no abuse of discretion. Even if there was error in denying the motion, it would be harmless since the defense was permitted to establish during trial that the prints on the Dueitt car were not the appellant's.

■ The sixth ground of error also involves the suppression of exculpatory evidence. King claims that prosecutorial misconduct tainted a witness favorable to him. He argues that the only remedy for this misconduct was a dismissal of the indictment.

Craig Hill, an investigator for the district attorney's office, learned of the existence of another eyewitness, Al Scherzer, to the plane crash during the course of the trial. He put together a photo spread including the appellant's picture and showed them to this witness.

Scherzer pointed to one of the pictures and said: "This looks like this could be the man." The one he chose was not the appellant. After a brief discussion Hill pointed to the photograph of King and said, "No, that's the man." Soon thereafter, Hill informed the defense of the existence of this witness.

In his motion to dismiss, the appellant presented the testimony of Hill only. The court gave the defense the opportunity to subpoena Scherzer. Defense counsel declined, stating that his colleague telephoned Scherzer as soon as they learned of his existence but found him so uncooperative that "it would not be the most appropriate thing to call the man to Court". The trial court denied the motion to dismiss but allowed the defense to question Hill before the jury.

■ Suppression by the prosecution of material evidence requested by the defendant which is favorable to him violates due process of law. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *Nastu v. State,* 589 S.W.2d 434, 441 (Tex.Cr.App.1979). The defense has failed to show that the evidence in question would, have been favorable to him. Had the defense accepted the court's offer to subpoena Scherzer, the nature of his testimony could have been determined. Based on Hill's account of Scherzer's tentative identification, it would be sheer speculation to say what testimony he would have given. He might have forgotten or been unable to see the man at the crash site clearly enough to identify anyone. It is even possible that Mr. Scherzer would have given the exculpatory testimony which the appellant now contends he was denied. Certainly, defense counsel, who so skillfully cross examined the other witnesses could have attempted to elicit the truth from this one. Because the appellant has failed to show that this was a *Brady* witness and that the State's actions harmed him, we overrule his sixth ground of error.

■ Next, King complains in ground eight that the court should not have admitted the testimony of Sgt. Mike Burns identifying King's voice as that of the pilot of the crashing plane. After King's arrest, he and the Corpus Christi police worked out an arrangement whereby the police would recommend dismissal of the charges against King in return for his assistance in an undercover investigation. Sgt. Burns and the appellant entered into a written agreement which provided that the State would not use against King anything that he told the police from the time of his arrest. Through their work together on the undercover investigation, Sgt. Burns became familiar with the appellant's voice.

■ The appellant now complains that admission of Sgt. Burn's testimony breached the agreement between the appellant and the police. He concedes that this is not a Fifth Amendment issue because a voice, like fingerprints, is not testimonial evidence. See *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). As the Supreme Court has made clear in the constitutional context, what a person says (his statements) is distinct from how he says it (his voice). From the testimony given by Sgt. Burns, it appears that the agreement covered only the content of the appellant's speech and not his manner of speaking. Although available to the defense, the written agreement was not included in the record. From the evidence before us, we conclude that the admission of Sgt. Burn's testimony did not breach the agreement. Ground eight is overruled.

■ Finally, we turn to the fifth ground which challenges the sufficiency of the evidence. This is a circumstantial evidence case, therefore it was incumbent upon the State to exclude every other reasonable hypothesis, except that of the guilt of the appellant. *Moore v. State,* 640 S.W.2d 300, 302 (Tex.Cr.App.1982). Further, in our review, we view the evidence in the light most favorable to the jury verdict. *Allen v. State,* 651 S.W.2d 267 (Tex.Cr.App. 1983). In a possession of controlled substances case, the State must prove that the accused knew that the substance was contraband and that he exercised care, custody and control over it. *Sinor v. State,* 612 S.W.2d 591, 592 (Tex.Cr.App.1981).

■ In the case before us, the evidence shows quite clearly that the pilot of the plane met both elements of a possession case. The appellant does not discuss these matters in his brief. Instead, he focuses upon the issue of identity, claiming that the

State failed to prove that he was the pilot. The evidence which tends to establish that he was the pilot consists of: one eyewitness who placed him at the scene; another who was fairly certain the appellant was at the scene and that his statements implied he was the pilot; a third man who saw the appellant in Corpus Christi that day; a voice identification of the appellant as the pilot; registration of the plane in his name; papers on which his name was written inside the plane and his fingerprints on items found in the plane.

There was no testimony by any witness that the pilot could not have been King nor was there any alibi testimony offered. There was evidence that the latent prints on the Dueitt vehicle were not the appellant's but this fact in itself does not show that the appellant was not a passenger in the car. After reviewing all the evidence, we believe that the State excluded every other reasonable hypothesis except for the appellant's guilt. Appellant's fifth ground is overruled.

The judgment of the trial court is AFFIRMED.